

July 28, 2015

**VIA ECF AND U.S. MAIL**

Hon. William H. Pauley III
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

      Re:  *Multimedia Plus Inc. v. PlayerLync LLC*, 14-cv-8216 (WHP)

Dear Judge Pauley:

Defendant PlayerLync LLC hereby respectfully requests a pre-motion conference for permission to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) that the asserted claims of the patent asserted in the above referenced action are invalid under 35 U.S.C. § 101 as a matter of law.  Patentability under section 101 is a threshold issue in patent cases.  *See, e.g., OIP Technologies, Inc. v. Amazon.com, Inc.*, ___ F.3d ___, Case No. 2012-1696 (Fed. Cir. June 11, 2015), Circuit Judge Mayer *concurring* ("I commend the district court's adherence to the Supreme Court's instruction that patent eligibility is a 'threshold' issue, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), by resolving it at the first opportunity"—on a motion for judgment on the pleadings.).

On June 22, 2015, Plaintiffs served their infringement contentions asserting claims 1, 2, 4-7, 9-16, and 19 from U.S. Patent No. 7,293,925 (the "patent-in-suit") against PlayerLync.  The patent-in-suit is directed to administering a test to employees and tracking results.  *See*, e.g., Abstract.  There are only two independent claims (nos. 1 and 12), both of which recite virtually the same limitations, but claim 1 is written as a "system" claim and claim 12 is written as a "method" claim.  Claim 12 reads:

> 12.  A method of training employees via a hosted learning management training system, each employee having a unique identifier, comprising the steps of:
> a) presenting a high bandwidth training program including a test having questions on at least one device associated with a local computer having a low bandwidth connection;
> b) enabling an employee to take the test and enter answers to the questions on the local computer via a first human-computer interface connected to the local computer
> c) providing a remote computer server at a central location in communication with the at least one local computer via the low



        bandwidth connection and adapted to receive low bandwidth test information from the at least one local computer;
    d) transmitting from the local computer to the central server only the employee identifier and the low bandwidth test information via the low bandwidth connection when an employee interacts with the training program; and
    e) enabling a manager to access the low bandwidth test information from the central server in real time.

Patent-in-suit, 9:54-10:10.  During the prosecution of the patent-in-suit, the USPTO rejected the then pending claims as invalid under 35 U.S.C. § 101.  *See* October 13, 2006 Office Action, pp. 2-3.  The applicant overcame this rejection by amending the claims to add another limitation, *e.g.* as set forth in Claim 12 above—"enabling a manager to access the low bandwidth test information from the central server in real time."  *See* May 17, 2007 Response to Office Action, pp. 2, 5 and 11-12.  The patent-in-suit subsequently issued on November 6, 2007.

Since that time, however, the United States Supreme Court has issued two landmark decisions, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012) and *Alice Corp. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), that have significantly heightened the patent eligibility standard under section 101.  *See, e.g., Microsostrategy Inc. v. Apttus Corp.*, Case No. 3:15-cv-00021 (E.D. Val. July 20, 2015) (noting that these two cases "have substantially altered the § 101 landscape" and "[p]atentability under § 101 is now a higher bar").  The Federal Circuit and district courts throughout the country have dismissed on the pleadings numerous patent infringement suits on § 101 grounds.  *See, e.g., OIP Technologies,* ___ F.3d ___, Case No. 2012-1696 (affirming district court order granting judgment on the pleadings that asserted patent claims were invalid under section 101 because "the patent-in-suit claims no more than an abstract idea coupled with routine data-gathering steps and conventional computer activity").

The alleged invention of the patent-in-suit is directed to an abstract idea—e.g., administering a test—using well-known, conventional computer components.  Such abstract ideas are not patentable.  *Alice Corp.,* 134 S. Ct. 2347.  None of the asserted claims contain any inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.  As the Supreme Court held in *Alice*, the "[m]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358.  The recited generic computer components of the asserted claims (e.g., "local computer"; "human-computer interface"; "server"; "website"; "sorting software") merely perform well-known computer functions of inputting, transmitting, receiving, and sorting data, functions that any generic computer can perform, and functions that generic computers have performed for decades.

The asserted claims and the specification of the patent-in-suit make clear that the claimed abstract idea is not limited to one specific type of computer or application, but rather may be realized broadly in numerous ways including without even using all of the recited



generic computer components.  *See, e.g.,* patent-in-suit, 4:67-5:1 ("Alternatively, an employee could write his answers down on a piece of paper"); 5:8-30 ("the entire training program could be conducted over the telephone as a teleconference [which] *might eliminate the need for a local computer*").  Indeed, stripped of the generic computer components, the asserted claims are directed to the patent-ineligible concept of presenting a test to an employee, and receiving, processing, and/or reviewing data from that employee.  For example, the steps of independent claim 12 (referenced above) merely recite steps that are equivalent to those one could take in the physical world and existed long before the patent-in-suit:  providing an employee a test booklet with test questions, enabling the employee to take the test by writing his or her answers on, for example, a chalkboard under his or her name, and enabling a manager to watch the employee write the answers on the chalkboard in real-time.  *See Adrea, LLC v. Barnes & Noble, Inc. et al.*, Case No. 1:13-cv-04137, p. 11-12 (S.D.N.Y. July 24, 2015) (granting motion for judgment on the pleadings of invalidity under 101 where the "patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world").  Similarly, dependent claim 13 likewise recites steps that can be taken in the physical world (the employee's answers can be transcribed by pen and paper and mailed to the manager at a remote location), as does dependent claim 16 (the manager can sort the test answers by, *e.g.*, employee name alphabetically, using his or her mind, with or without a pen and paper, as teachers have done since the beginning of formal education).  These and the other asserted claims do not add any inventive concept that is sufficient to make the unpatentable abstract idea patentable.  *See id.* at p. 13 (quoting *Alice Corp.,* 134 S. Ct. at 2359, and concluding that "every other step recited by the patent claims, are simply 'well-understood, routine, conventional activities previously known to the [computer] industry'").  The asserted claims here are no different than the numerous cases finding software patents invalid under section 101 since the Supreme Court's *Alice* decision.

Defendant's proposed motion for judgment on the pleadings is an efficient method for dealing with the "threshold" issue of patentability before the parties and the Court expend significant resources on discovery and claim construction issues, which could all be rendered unnecessary.

                                           Respectfully submitted,

                                           _____
                                           Ryan Tyz, attorney for Defendant