**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MULTIMEDIA PLUS, INC., et al.,

          Plaintiffs,

   v.

PLAYERLYNC, LLC,

          Defendant.

Case No.:  14-8216 (WHP)

**DEFENDANT PLAYERLYNC LLC'S**
**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

Date:         November 6, 2015
Time:         11:00 a.m.
Courtroom:   20B
Judge:       Hon. William H. Pauley III

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS .................. 1

MEMORANDUM OF LAW IN SUPPORT ................................................................. 2

I.      INTRODUCTION ................................................................................ 2

II.     STATEMENT OF FACTS .................................................................... 2

     A.     The '025 Patent's Specification ................................................. 3

     B.     The '025 Patent's Claims and Prosecution History ................................. 5

III.    ARGUMENT .......................................................................................... 8

     A.     THE '025 PATENT IS INVALID FOR CLAIMING THE UNPATENTABLE ABSTRACT IDEA OF ADMINISTERING A TEST. ............................ 8

          1.     Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter. ................................................................. 8

          2.     The '025 Patent is Drawn to the Abstract Idea of Administering a Test. . 11

          3.     The Claims Add No "Inventive Concept" Sufficient to "Transform" the Abstract Idea into a Patent-Eligible Application. ...................... 14

          4.     The Dependent Claims Add Nothing Inventive. ........................ 20

     B.     RESOLVING QUESTIONS OF PATENT ELIGIBILITY ON THE PLEADINGS IS APPROPRIATE. ......................................................... 21

IV.    CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Accenture Global Servs., GMBH v. Guidewire Software, Inc.*
728 F.3d 1336 (Fed. Cir. 2013)................................................................. 6, 18

*Adrea, LLC v. Barnes & Noble, Inc. et al.*
Case No. 1:13-cv-04137 (S.D.N.Y. July 24, 2015) ............................... 13, 15

*Affinity Labs of Texas LLC v. DirecTV, LLC*
Case No. 6:15-CV-0030, 2015 WL 3764356 (W.D. Tex. July 7, 2015) .................................... 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
134 S. Ct. 2347 (2014)................................... 6, 7, 8, 9, 10, 11, 14, 15, 17, 20, 21, 22, 23

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*
56 F.Supp.3d 813 (E.D. Va. 2014).......................................................... 11, 18

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*
133 S. Ct. 2107 (2013).................................................................................. 8

*Becton, Dickinson and Co. v. Baxter Intern'l Inc.*
Case No. 1-14-cv-222-LY (W.D. Tex. Aug. 3, 2015) ........................... 10, 20

*Bilski v. Kappos*
561 U.S. 593 (2010).......................................................... 8, 9, 11, 14, 22

*buySAFE v. Google, Inc.*
765 F.3d 1350 (Fed. Cir. 2014)................................... 9, 11, 14, 16, 21

*Cal. Inst. of Tech. v. Hughes Communications Inc.*
59 F.Supp.3d 974 (C.D. Cal. 2014) .......................................................... 16

*Clear with Computers, LLC v. Altec Indus., Inc.*
Case No. 6:14-cv-00089-JRG, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ................................ 19

*Cogent Medicine, Inc. v. Elsevier Inc.*
70 F.Supp.3d 1058 (N.D. Cal. 2014) ........................................................ 21

*Content Extraction and Transmission LLC v Wells Fargo Bank, National Association*
776 F.3d 1343 (Fed. Cir. 2014)................................................................. 20

*CyberFone Sys., LLC v. CNN Interactive Group, Inc.*
558 F.App'x 988 (Fed. Cir. 2014)............................................................. 22

*CyberSource Corp. v. Retail Decisions, Inc.*
654 F.3d 1366 (Fed. Cir. 2011)................................................................. 14

*DDR Holdings, LLC v. Hotels.com, L.P.*
773 F.3d 1245 (Fed. Cir. 2014)................................................................. 15

*Dealertrack, Inc. v. Huber*
674 F.3d 1315 (Fed. Cir. 2012).......................................................... 9, 18

*DietGoal Innovations, Inc. v. Bravo Media LLC*
33 F.Supp.3d 271 (S.D.N.Y. 2014)................................................. 11, 14, 17

*Enfish, LLC v. Microsoft Corp.*
56 F.Supp.3d 1167 (C.D. Cal. 2014) ...................................................... 11

*Intellectual Ventures I, LLC v. Motorola Mobility LLC*
Case No. 11-908-SLR, 2015 WL 846532 (D. Del. Feb. 24, 2015)................................ 18

*IPLearn, LLC v. K12 Inc.*
Case No. CV 11–1026–RGA, 2014 WL 7206380 (D. Del. Dec. 17, 2014) ...................... 12

*IPLearnFocus, LLC v. Microsoft Corp.*
Case No. 14-cv-00151-JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015) ........................ 10, 12, 14

*Kickstarter, Inc. v. Fan Funded, LLC*
Case No. 11 Civ. 6909 (KPF), 2015 WL 3947178 (S.D.N.Y. June 29, 2015) .............. 9, 10, 17, 21

*Kroy IP Holdings, LLC v. Safeway, Inc.*
Case No. 2:12-cv-800-WCB, 2015 WL 3452469 (E.D. Tex. May 29, 2015) ............................ 19

*Le Roy v. Tatham*
55 U.S. 156 (1852) ............................................................................ 8

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*
66 F.Supp.3d 829 (E.D. Tex. 2014) ........................................................ 23

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*
Case No. 14 c 4957, 2015 WL 3637740 (N.D. Ill. June 12, 2015)............................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*
132 S. Ct. 1289 (2012) ....................................................... 2, 6, 7, 8, 9, 14, 20

*Microstrategy Inc. v. Apttus Corp.*
2015 WL 4425828 (E.D. Va. July 7, 2015) ................................................. 9

*Morales v. Square, Inc.*
Case No. 5:13-cv-1092-DAE, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014)................ 11, 13, 16

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*
243 U.S. 502 (1917) ......................................................................... 2

*O'Reilly v. Morse*
56 U.S. 62 ................................................................................... 8

*OIP Technologies, Inc. v. Amazon.Com, Inc.*
788 F.3d 1359 (Fed. Cir. 2015) ......................................................... 10, 15, 22

*Patel v. Contemporary Classics of Beverly Hills*
259 F.3d 123 (2nd Cir. 2001).............................................................. 22

*Sewell v. Bernardin*
Case No. 14-3143, 2015 WL 4619519 (2nd Cir. Aug. 4, 2015)................................. 22

*SmartGene, Inc. v. Advanced Biological Labs., SA*
555 Fed. Appx. 950 (Fed. Cir. 2014) ..................................................... 18

*Ultramercial, Inc. v. Hulu, LLC*
772 F.3d 709 (Fed. Cir. 2014)........................................... 2, 9, 10, 13, 16, 17, 20, 22

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Case No.: 14-8216

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA LLC*
Case No.  13 C 4417, 2015 WL 394273 (N.D. Ill. Jan. 29, 2015)................................................... 12

*Wolf v. Capstone Photography*
No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014)........................................ 21, 22

**<u>Statutes</u>**

35 U.S.C. § 101 ............................................................................................................... 1, 2, 6, 8

Fed. R. Civ. P. 12(c).............................................................................................................. 1, 22

**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 6, 2015, at 11:00 a.m., or as soon thereafter as this matter may be hard, in the United States District Court for the Southern District of New York, located at 500 Pearl Street, New York, NY 10007, in the courtroom of the Honorable William H. Pauley III, Defendant PlayerLync LLC will and hereby does move the Court for an order granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) that all of the asserted claims of the patent asserted by plaintiffs in this case, U.S. Patent No. 7,293,025, are invalid as a matter of law under 35 U.S.C. § 101.

All of the asserted claims of asserted patent are directed to the abstract idea of administering a test, and none of the asserted claims contain any inventive concept.  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Law in Support, U.S. Patent No. 7,293,025, the file history of U.S. Patent No. 7,293,025, the pleadings and papers on file in this action, any other matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

Dated:  August 25, 2015

/s/ *Ryan Tyz*

Ryan Tyz, CSB 234895
TYZ LAW
28 2nd Street, Floor 3, #3119
San Francisco, CA 94105
Telephone:  (415) 513-0765
Email:  ryan@tyzlaw.com

Attorney for Defendant, PlayerLync LLC

**MEMORANDUM OF LAW IN SUPPORT**

## I.  INTRODUCTION

A cornerstone of American patent law is the 150-year-old prohibition against owning naked ideas disembodied from actual inventions.  This rule, a judicial interpretation of 35 U.S.C. § 101, prevents a patentee from owning abstract ideas and is intended to ensure that patents promote innovation by contributing to the store of public knowledge without burdening future innovation by others.

The patent asserted by plaintiffs Multimedia Plus, Inc. and Multimedia Technologies, LLC ("Plaintiffs") against defendant PlayerLync, LLC ("PlayerLync")—U.S. Patent No. 7,293,025 ("the '025 patent")—is a textbook example of an attempt to preempt basic aspects of organizing human activity while contributing nothing to the advancement of the useful arts.  The '025 patent simply recites functional steps of administering a test implemented on generic computing equipment, without any specific programming that was not already conventional at the time of the patent.  Stripped of these gratuitous references to conventional and generic computing equipment performing conventional and generic computing functions—none of which is entitled to any inventive weight—the patent claims only the naked and disembodied idea of administering a test.  This is not an invention.  It is an idea only.  And it is an idea as old as teaching itself.

As Federal Circuit Judge Mayer explained in a recent concurring opinion:

> Unless we are to assume that the constraints explicit in the Intellectual Property Clause [of the United States Constitution] are mere surplusage, we are bound to ensure that the patent monopoly serves '[t]o promote the Progress of Science and useful Arts' . . . .  Section 101 is the gateway to the Patent Act for good reason.  It is the sentinel, charged with the duty of ensuring that our nation's patent laws encourage, rather than impede, scientific progress and technological innovation.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717-18 (Fed. Cir. 2014) (Mayer, J., concurring) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012); *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 511 (1917)).

## II.  STATEMENT OF FACTS

The '025 patent is titled "Hosted Learning Management System and Method for Training

Employees and Tracking Results of Same" and claims priority to an application (no. 10/812,674) filed on March 31, 2004.  *See* Exhibit 1 (U.S. Patent No. 7,293,025).  On June 22, 2015, Plaintiffs served their infringement contentions asserting claim nos. 1, 2, 4-7, 9-16 and 19 (the "asserted claims").  *See* Exhibit 2 (Plaintiff's Preliminary Infringement Contentions).

### A.   The '025 Patent's Specification

The '025 patent is directed to the naked idea of administering a test.  *See, e.g.,* Abstract. The patent describes that this idea may be implemented using generic computer components (e.g., "local computer," "human-computer interface," "display," "server," "website," "sorting software").  The patent does not disclose any algorithm, special programming or specialized technology.  It does not describe any technological advance or suggest any novel way of administering a test.  Rather, it recites only known technologies defined solely by their function— the well-known computer functions of inputting, transmitting, receiving, storing, sorting, and accessing data, functions that any generic computer can perform, and functions that generic computers were designed to perform and have performed since well before the '025 patent.



Fig. 1 of the '025 patent, reproduced to the left, is an "overview schematic" of the alleged "inventive training system."  '025 patent at 4:21-22.  As the figure illustrates, the claimed invention consists of generic computing components labeled according to their generic computer names:  (1) a "central server" (element 50); (2) an employee's "local computer" (element 20); (3) a supervisor's "computer" (element 60); (4) a "communications link" (element 23); (5) a "training session display" (element 24); (6) an employee "interface" ("a first human-computer interface") (element 22); and (7) a supervisor "web interface" ("a second human-computer interface") (element 52).  '025 patent, Fig. 1; 2:33-35, 3:4-14, 3:52-56, 4:21-63, 5:32-34, 6:21-31.

3

The generic "central server" (element 50) is described in the patent simply as a "remote computer server at a central location." *Id.* at 2:35-36. The employee's generic "local computer" (element 20) and supervisor's generic "computer" (element 60) are described in the patent simply as a "local computer" and a "computer." *Id.* at 2:28-35, 6:26-31. The generic "communications link" (element 23) is described in the patent as "any type of communication link, but it is preferred that it is a conventional Internet connection via a modem, DSL service, a proxy server, or the like." *Id.* at 5:32-46. The generic "display" (element 24A-C) is described in the patent simply as "a display or presentation device" and is described in functional terms as "any form of equipment capable of presenting information" including "non-visual means of communication." *Id.* at 4:42-43, 4:54-57. The employee's generic "interface" (element 22) is described in the patent in purely functional terms as a "human-computer interface" that "allows an employee, upon watching a training program and coming to a question or quiz portion of the program, to enter an answer or answers into local computer 20 . . . [and] to enter identification information as needed," and "is contemplated to include *any and all* human-computer interfaces" such as "a keyboard, a mouse, a touch-screen (either integral with display 24 or separate therefrom), voice recognition software, or an IVR system." *Id.* at 2:33-35, 4:60-67, 5:3-8 (emphasis added). Similarly, the supervisor's generic "web interface" (element 52) is described in the patent in purely functional terms as a "human-computer interface" and "web page" that allows a supervisor to "access the data [employee test information] from her computer via the Internet" and that is "dynamically created as a web interface pursuant to the [supervisor's] data sorting requests." *Id.* at 3:4-14, 3:52-56, 6:26-31.

In addition to the generic hardware computing components depicted in Figure 1, the specification of the '025 patent describes generic software: (1) a "training program . . . resident on the local computer . . . including an interactive test having questions" (*id.* at 2:30-33); and (2) "software resident on the central server for sorting the test information" (*id.* at 2:60-62.). The '025 patent states that the training program "may be resident on the memory of the local computer 20 in the form of software (e.g., a Macromedia Director file), or . . . may be insertable

into a local computer 20 and resident on a medium such as a CD-ROM or DVD" or "any other medium." *Id.* at 4:27-34. The patent describes this generic software in purely functional terms: it allows an employee to log into the system using a unique identifier, "tell[s] the employee which training module he is supposed to complete," presents "the training program on display 24," "present[s] [the employee] with one or more questions in the form of a quiz or test," allows the employee "to enter an answer or other test information" into local computer 20, and "uploads that information to central server 50 via link 23." (*Id.* at 5:47-6:7.) The '025 patent also describes "separating the training program from the answers" so that "[w]hen an employee interacts with the training program, the local computer transmits only the employee's identifier and test information to the central server." (*Id.* at 2:37-40, 2:54-60.) The '025 patent describes the sorting software on the central server in purely functional terms as well: "As central server 50 receives test information from local computer 20, software resident on central server 50 . . . sorts the test information into relevant categories," tallies the employee's answers, transmits "results from the tallying . . . from the server to the local computer [where they] are accessible to the employee," and allows a supervisor using the web interface to access the test information on the central server "on demand" pursuant to the supervisor's data sorting requests. (*Id.* at 2:61-3:11, 6:21-34.)

Nothing in the specification even purports to describe any new technological advance to implement any of these functional requirements. There is no particular computer programming, system logic, or algorithmic steps. There is not a single improvement to the functioning of any computer, server, interface, website, software, or any other technology or technical field. To the contrary, the '025 patent is completely agnostic about the particular technology that could (to say nothing of should) be used to implement its basic idea. Ultimately, the specification describes nothing more than a pure abstraction implemented using generic computer technology—a naked idea disembodied from any reference to any particular, much less inventive, technology.

## B.    The '025 Patent's Claims and Prosecution History

The '025 patent has only two independent claims (nos. 1 and 12), both of which recite

virtually the same limitations, but claim 1 is written as a "system" claim and claim 12 is written as a "method" claim.  Despite being styled as a "system," claim 1 is, in substance, nothing more than a method claim.  See *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014) ("[T]he system claims are no different from the method claims in substance.  The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea."); *Accenture Global Servs., GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[S]ystem claims that closely track method claims and are grounded by the same meaningful limitations will generally rise and fall together.").  Claim 12 is representative of the two independent claims:

> 12.  A method of training employees via a hosted learning management training system, each employee having a unique identifier, comprising the steps of:
> a)  presenting a high bandwidth training program including a test having questions on at least one device associated with a local computer having a low bandwidth connection;
> b)  enabling an employee to take the test and enter answers to the questions on the local computer via a first human-computer interface connected to the local computer
> c)  providing a remote computer server at a central location in communication with the at least one local computer via the low bandwidth connection and adapted to receive low bandwidth test information from the at least one local computer;
> d)  transmitting from the local computer to the central server only the employee identifier and the low bandwidth test information via the low bandwidth connection when an employee interacts with the training program; and
> e)  enabling a manager to access the low bandwidth test information from the central server in real time.

'025 patent, 9:54-10:10.

Significantly, during the prosecution of the '025 patent, the USPTO rejected the then pending claims as invalid under 35 U.S.C. § 101.  *See* Exhibit 3 (October 13, 2006 Office Action), pp. 2-3.  These rejections were prior to the Supreme Court's *Mayo* and *Alice* decisions, which substantially raised the bar for patent eligibility as noted below.  The applicant overcame this rejection by amending the claims to add another limitation: "a second interface enabling a

manager to access said test information on said central computer" and "thereby allowing dynamic managerial oversight (Claim 1) and "enabling a manager to access the test information from the central server in real time" (Claim 13, now Claim 12).  *See* Exhibit 4 (May 17, 2007 Response to Office Action), pp. 2, 5 and 11-12.  The '025 patent subsequently issued on November 6, 2007.

Each of the concepts described in the independent claims – presenting a training program to an employee on a computer, enabling an employee to take a test by entering answers on a computer, and transmitting over a network test information to a supervisor for review – was well-known as of the date of the '025 patent, as the '025 patent itself makes clear.  *See, e.g.*, '025 patent at 1:39-62 (describing use of "recorded training programs"); 2:11-13 ("Certain conventional employee training systems place their training programs on a central computer that is accessible remotely"); 1:62-2:3 ("enter[ing] [test data] into a central database in a sortable manner" allows "tracking of employee test data" and ability "to sort test data by any number of different variables").  The patent does not disclose or teach any concrete way of implementing the generic methodology recited in the claims to purportedly improve on the existing technology.  As discussed below, the additional limitation that overcame the USPTO's initial 101 rejection merely describes another generic computer component (a web interface) and another generic computing function (enabling access to data on a central server) and therefore adds nothing inventive as articulated in the Supreme Court's *Alice* and *Mayo* decisions to transform the abstract idea into patent-eligible subject matter.

The '025 patent also includes several dependent claims, none of which meaningfully adds to or limits the independent claims from which they depend.  Those claims are directed to: an interface that includes at least one of a keyboard, a mouse, a touch-screen, etc. (Claim 7); transmitting particular types of test information from the local computer to the central server for access by the employee (Claim 11); sorting software that processes test information on the central server (Claims 2, 6, 16); a website for managers to remotely access test information on the central server (Claims 4, 13, 14); updating the website and test information presented to the manager (Claims 5, 15); communication between the central server and multiple local computers (Claims

9, 19); and putting the training program on a particular type of media, e.g. a CD-ROM (Claim 10). Each of these dependent claims recites only a different permutation of the fundamental practices of presenting a test to an employee and receiving, processing and reviewing the employee's answers, using nothing more than routine, well-understood generic functions of generic computer components.

## III.   ARGUMENT

### A.   THE '025 PATENT IS INVALID FOR CLAIMING THE UNPATENTABLE ABSTRACT IDEA OF ADMINISTERING A TEST.

#### 1.   Abstract Ideas Have Long Been, and Continue to Be, Ineligible Subject Matter.

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful *process*, *machine*, *manufacture*, or *composition of matter*, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added). The Supreme Court has "long held that this provision contains an important implicit exception [for] [l]aws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S. Ct. at 2354 (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotations omitted). It has been well established "for more than 150 years" that a patent directed to a naked idea is outside the scope of patent eligibility. *Id.* at 2354 (citing *Bilski v. Kappos*, 561 U.S. 593, 594 (2010); *O'Reilly v. Morse*, 56 U.S. 62, 112-20 (1853); *Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852)). The concern underlying the abstract idea doctrine is that a patentee might "pre-empt" all ways—including new ways invented by the public in the future—of achieving the results claimed by the patent. *Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of preemption"); *Mayo*, 132 S. Ct. at 1293 (preemption would "tend to impede innovation more than it would tend to promote it"). A patent claiming a naked idea "'would risk disproportionately tying up the use of the underlying' idea[]." *Alice*, 134 S. Ct. at 2354-55 (citing *Mayo*, 132 S. Ct. at 1294).

"The Supreme Court in *Alice* clarified the two-step framework, first set forth in *Mayo*, that courts must use in 'distinguishing patents that claim laws of nature, natural phenomena, and

abstract ideas from those that claim patent-eligible applications of those concepts.'  First, the court must determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909(KPF), 2015 WL 3947178, at *6 (S.D.N.Y. June 29, 2015) (quoting *Alice*, 134 S. Ct. at 2355) (internal citation omitted). Abstract ideas may include a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice," or "a method of organizing human activity," even if the claim is not addressed to a "preexisting, fundamental truth" like a mathematical formula or law of nature.  *Alice*, 134 S. Ct. at 2356 (citing *Bilski*, 561 U.S. at 611, 619); *see also id.* at 2356 (a method of mitigating settlement risk using a third party); *Bilski*, 561 U.S. at 609 (a method for hedging against the financial risk of price fluctuations); *Ultramercial*, 772 F.3d at 714–15 (a method for displaying an advertisement in exchange for access to copyrighted media and using an advertisement as a currency); *buySAFE v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (a method by which a third party can guarantee a sales transaction); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (a method for processing information through a clearinghouse).  Fundamentally, an idea is impermissibly abstract where, as here, it is "devoid of a concrete or tangible application." *Ultramercial*, 772 F.3d at 715; *Microstrategy Inc. v. Apttus Corp.*, 2015 WL 4425828, at *7 (E.D. Va. July 7, 2015) ("Identifying, organizing, and presenting stored information is an abstract idea that is 'devoid of a concrete or tangible application.'") (citing *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 c 4957, 2015 WL 3637740, at *5–6 (N.D. Ill. June 12, 2015) (quoting *Ultramercial, Inc.,* 772 F.3d at 715).

   "Second, if [the claims at issue are directed to one of those patent-ineligible concepts], then the court must determine whether there is something else in the claims—an 'inventive concept'—'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Kickstarter*, 2015 WL 3947178, at *6 (quoting *Alice*, 134 S. Ct. at 2355).  The second step asks whether the "additional features" of the claim ensure that it "is more than a drafting effort designed to monopolize the [abstract idea.]" *Alice*, 134 S. Ct. at 2357 (citing *Mayo*, 132 S. Ct. at 1297).  "The Court in *Alice* made clear that a claim that is

directed to an abstract idea does not move into [Section] 101 eligibility territory by 'merely requir[ing] generic computer implementation." *Kickstarter*, 2015 WL 3947178, at * 6 (quoting *Ultramercial*, 772 F.3d at 713); *see also OIP Technologies, Inc. v. Amazon.Com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible") (citing *Alice*, 134 S. Ct. at 2359 ("use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" is not an inventive concept)). Nor does adding "well-understood, routine, conventional activities previously known to the industry"; limiting an idea to a particular field of use or a particular technological environment; adding data-gathering steps; or adding any other token post- or extra-solution activity. *Alice*, 134 S. Ct. at 2357-59 (internal quotations omitted).

*Alice* has led to a chorus of courts invalidating patents directed to software and business methods that implement long-standing abstract concepts and methods of organizing human activity using generic computer components, like the '025 patent. *See, e.g., IPLearnFocus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *4-5 (N.D. Cal. July 10, 2015) (invalidating patent for computer-based method to monitor students' behavior during teaching and adjust teaching in real-time, finding the claims "plainly directed at implementing . . . the abstract idea of conventional teaching that not only happens in schools across the country every day, but has probably existed as long as there has been formal education") (quotation marks omitted); *Becton, Dickinson and Co. v. Baxter Intern'l Inc.*, No. 1-14-cv-222-LY, at pp. 9-11 (W.D. Tex. Aug. 3, 2015) (invalidating patent directed to a computer-based method for pharmacist to remotely supervise and verify the work of non-pharmacists to ensure the work's accuracy, finding "supervision and verification . . . is an abstract idea, one that amounts to a fundamental concept and longstanding practice applicable to many fields, one of which is pharmacy"); *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909(KPF), 2015 WL 3947178, at *6 (S.D.N.Y. June 29, 2015) (invalidating patent directed to computer-based crowd-funding method, finding that the claims "are squarely about" the "abstract concept" of "patronage—a

concept that is 'beyond question of ancient lineage'") (quoting *buySAFE*, 765 F.3d at 1355); *DietGoal Innovations, Inc. v. Bravo Media* LLC, 33 F.Supp.3d 271, 283-288 (S.D.N.Y. 2014) (invalidating patent claims directed to computer-based meal planning that "recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences," finding "[m]eal planning is sure a 'long-prevalent' practice" that "humans have assured engaged" in "for millennia.") (quoting *Bilski*, 130 S. Ct. at 3231); *see also Enfish, LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167, 1170 (C.D. Cal. 2014) (noting that the Supreme Court has recently "indicated that patentability [under § 101] is a higher bar").  Indeed, since *Alice*, district courts in more than 80 cases have found patent claims invalid under § 101, including 44 at the pleading stage.  *See* Exhibit 5 (table listing and summarizing holdings of those 44 cases).

### 2.    The '025 Patent is Drawn to the Abstract Idea of Administering a Test.

As discussed above, "a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice" or "methods of organizing human activity." *Morales v. Square, Inc.*, CV No. 5:13-cv-1092-DAE, 2014 WL 7396568, at *11 (W.D. Tex. Dec. 30, 2014).  "In determining whether a claim is directed to an abstract idea, courts look past the claim language to 'the purpose of the claim—in other words, what the invention is trying to achieve.'"  *Morales*, 2014 WL 7396568, at *11 (quoting *CalTech*, 59 F.Supp.3d at 991); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F.Supp.3d 813, 820 (E.D. Va. 2014) (analyzing a claim "[o]n its face and looking past the mere claim language"); *Alice*, 134 S. Ct. at 2356 (finding that a claim reciting a specific, multiple-step process was drawn to the abstract concept of mitigating settlement risk using a third party).

Here, on their face, the claims of the '025 patent are directed to the "longstanding practice" of administering a test, and "a method of organizing human activity"—learning.  For example, claim 12 includes such elements as "a test having questions," "enabling an employee to take the test and enter answers to the questions," "transmitting . . . test information" and "enabling a manager to access . . . test information."  '025 patent at 9:54-10:10.  These steps are

squarely about administering a test—a concept as old as education itself. *See, e.g.*, *IPLearnFocus, LLC v. Microsoft Corp*., No. 14-cv-00151-JD, 2015 WL 4192092, at *5 (N.D. Cal. July 10, 2015) (invalidating patent "directed at implementing … the abstract idea of conventional teaching that not only happens in schools across the country every day, but has 'probably existed as long as there has been formal education.'") (quoting *IPLearn, LLC v. K12 Inc*., No. CV 11–1026–RGA, 2014 WL 7206380, at *6 (D. Del. Dec. 17, 2014)).

The asserted claims, and the abstract idea they implicate, are comparable to those of other cases finding patents ineligible.  For example, in *IPLearnFocus*, the patents at issue claimed "the invention of 'learning via a computing device, and more particularly to learning method and system using detached sensor." *Id.* at *1.  The court found that the steps described by the claims – "present study materials; monitor student's behavior through sensor; analyze monitored results with rules; provide indication on student's concentration; react according to indication" – "seek to implement on a computer the watchful eye of a good teacher." *Id.* at *4-5.  The court found that these "steps are an abstraction, 'addressed to fundamental human behavior related to instruction"; "[p]ut aside the parts reciting standard technology ('display,' 'imaging sensor,' 'processor,' etc.), and what is left" are "steps involved in the abstract idea of teaching." *Id.* (quoting *IPLearn, LLC v. K12 Inc*., No. CV 11–1026–RGA, 2014 WL 7206380, at *6 (D. Del. Dec. 17, 2014).  Likewise, here, stripped of the parts reciting standard technology (e.g., "local computer," "human-computer interface," "training program," "display," "server," "website," "sorting software"), all of the asserted claims describe abstract steps (e.g., "enabling an employee to take the test and enter answers to the questions," "transmitting . . . test information," "enabling a manager to access . . . test information") that are "addressed to fundamental human behavior related to instruction," namely administering a test to train a person. *See id.*; *see also Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA LLC,* Case No. 13 C 4417, 2015 WL 394273, at *6 (N.D. Ill. Jan. 29, 2015) (invalidating patent claims on method of screening equipment operators for impairments, finding claims were directed to the abstract idea of "testing operators of any kind of moving equipment for any kind of physical or mental impairment").

This concept of administering a test is an abstract idea for section 101 purposes because it has "no particular concrete or tangible form." *See Ultramercial*, 772 F.3d at 715. The claims are not limited to "any particular application or use, but instead simply describes, at a high level of generality, the concept of" administering a test. *See Morales*, 2014 WL 7396568, at *11. Moreover, the asserted claims and the specification of the patent-in-suit make clear that the claimed abstract idea is not limited to one specific type of computer or application, but rather may be realized broadly in numerous ways including without even using all of the recited generic computer components. *See, e.g.,* '025 patent, 4:67-5:1 ("Alternatively, an employee could write his answers down on a piece of paper"); 5:8-30 ("the entire training program could be conducted over the telephone as a teleconference [which] *might eliminate the need for a local computer*"). Indeed, stripped of the generic computer components, the asserted claims are directed to the patent-ineligible concept of presenting a test to an employee, and a supervisor receiving, processing, and/or reviewing the employee's answers to the test. For example, the steps of independent claim 12 (referenced above) merely recite steps that are equivalent to those one could take—and have taken—in the physical world and existed long before the patent-in-suit: providing an employee a test booklet with test questions, enabling the employee to take the test by writing his or her answers on, for example, a chalkboard under his or her name, and enabling a manager to watch the employee write the answers on the chalkboard in real-time. *See Adrea, LLC v. Barnes & Noble, Inc. et al.*, Case No. 1:13-cv-04137, p. 11-12 (S.D.N.Y. July 24, 2015) (granting motion for judgment on the pleadings of invalidity under section 101 where the "patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world"). Similarly, dependent claim 13 likewise recites steps that can be taken in the physical world (the employee's answers can be transcribed by pen and paper and mailed to the manager at a remote location), as does dependent claim 16 (the manager can sort the test answers by, *e.g.*, employee name alphabetically, using his or her mind, with or without a pen and paper, as teachers have done since the beginning of formal education). The asserted claims here are no different than the numerous cases finding software patents invalid under section 101 since

the Supreme Court's *Alice* decision.  *See, e.g., DietGoal Innovations*, 33 F.Supp.3d at 284

(invalidating patent claims that "recite steps that, although computer-implemented by virtue of the

patent application, could 'be performed in the human mind, or by a human using pen and paper,'"

because "a method that can be performed by human thought along is merely an abstract idea and

is not patent-eligible under § 101.") (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654

F.3d 1366, 1372 (Fed. Cir. 2011)); Exhibit 5 (summarizing holdings of 43 post-*Alice* cases

finding patent claims invalid under § 101 at the pleading stage, the majority involving software

patents).  All of the other depending claims recite steps that can be taken in the physical world

without the use of computers.

3.    The Claims Add No "Inventive Concept" Sufficient to "Transform" the Abstract Idea into a Patent-Eligible Application.

If a claim is directed to an abstract idea, the court must "determine whether it contains an

'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible

application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294).  Categories of

elements that do not "transform" an abstract idea and steps that are not "inventive" include those

that are "well-understood, routine, conventional." *Id.* at 2359 (quoting *Mayo*, 132 S. Ct. at 1294).

Implementation of an abstract idea on a "generic" computer is also not "inventive." *Id.* at 2357-

58 ("Simply appending conventional steps, specified at a high level of generality, [is] not

'enough' to supply an 'inventive concept' . . . .  [T]he mere recitation of a generic computer

cannot transform a patent-ineligible abstract idea into a patent-eligible invention.") (quoting

*Mayo*, 132 S. Ct. at 1294, 1297, 1300; *Bilski*, 561 U.S. at 610); *buySAFE, Inc. v. Google, Inc*.,

765 F.3d 1350, 1355 (Fed. Cir. 2014) (invocation of generic computer functionality "adds no

inventive concept").  Here, as explained above, the claims of the '025 patent recite only generic

computing equipment and conventional functionality incidental to implementing the abstract idea

of administering a test and tracking and accessing test results.  They are not inventive. *See*

*IPLearnFocus, LLC v. Microsoft Corp*., No. 14-cv-00151-JD, 2015 WL 4192092, at *5 (N.D.

Cal. July 10, 2015) ("The only novelty [patentee] asserts is to implement traditional teaching

practices on a generic computer platform.  None of the claims or specifications in the patents describes any hardware or software beyond commonly available computer processors, sensors, and displays.").  That the recited generic computer components of the asserted claims may make this process faster or more convenient does not make the asserted claims patentable.  *See OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360, 1362-1364 (Fed. Cir. 2015) (affirming district court order granting judgment on the pleadings that asserted patent claims were invalid under section 101 because "the patent-in-suit claims no more than an abstract idea coupled with routine data-gathering steps and conventional computer activity").

The computer elements in independent claims 1 and 12 of the asserted patent recite generic, nondescript computer components and functionalities including a "local computer," a "training program including an interactive test having questions," a "training session display," a "first human-computer interface . . . enabling an employee to enter answers to questions," "each employee having a unique identifier," a "low bandwidth connection," a "remote computer server at a central location communicatable with" and receiving an employee's unique identifier and test information from the local computer, and a "second interface enabling a manger to access" the test information on the central server in real time.  '025 patent at 8:37-59, 9:54-10:10.  The patentee did not purport to improve any of these conventional and well-known computer technologies.  These and the other asserted claims do not add any inventive concept that is sufficient to make the unpatentable abstract idea patentable.  *See Adrea, LLC v. Barnes & Noble, Inc. et al.*, Case No. 1:13-cv-04137, p. 13 (S.D.N.Y. July 24, 2015) (quoting *Alice Corp.,* 134 S. Ct. at 2359, and concluding that "every other step recited by the patent claims, are simply 'well-understood, routine, conventional activities previously known to the [computer] industry'").  As the Supreme Court recently reaffirmed, patents that "improve the functioning of a computer" or "effect an improvement" in some "other technology or technical field" may be inventive, but patents that merely implement an idea using generic computers performing generic functions— like the '025 patent here—are not.  *See Alice*, 134 S. Ct. at 2358-60; *cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258–59 (Fed. Cir. 2014) (finding a computer-implemented

method of generating a composite webpage patent-eligible because the claims do not rely on a "computer network operating in its normal, expected manner" but instead "specify how interactions with the Internet are manipulated to yield a desired result . . . that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink" to address an "Internet-centric challenge"); *Cal. Inst. of Tech. v. Hughes Communications Inc.*, 59 F.Supp.3d 974, 994 (C.D. Cal. 2014) ("*CalTech*") (finding error detection algorithms involving irregular repetition of bits and use of linear transform operations patent-eligible because they are "narrowly defined" inventive concepts "tied to a specific error correction process" and "are not necessary or obvious tools for achieving error correction").

So *conventional* is the implementation of the claims that the specification even uses that very word to describe features of the claimed invention, such as "conventional interfaces" that "could be connected via wire or wirelessly in a conventional manner," and a "communications link" that "is preferred [to be] a conventional Internet connection."  '025 patent at 3:11-14, 5:43-46; *see Morales*, 2014 WL 7396568, at *15 (claims invalid where specification recited "conventional network control center with a mainframe computer," "conventional packet switcher" and "conventional media").  So *generic* is the implementation of the claims that the specification describes the "training program" at the heart of the claimed "inventive training system" as simply "software (e.g., a Macromedia Director file)."  And the '025 patent frames the invention as being network-based: claim 1 includes "transmit[ting] only the employee's identifier and . . . test information to said central server thereby allowing dynamic managerial oversight," and claim 12 adds "enabling a manager to access the . . . test information from the central server in real time."  Under Federal Circuit law, the mere disclosure of transmission of data over a network is a generic step, as "transfer of content between computers is merely what computers do."  *Ultramercial*, 772 F.3d at 717; *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Since *Alice*, district courts have invalidated many patents like the '025 patent for want of

an "inventive concept." Two recent decisions in this District are instructive. In *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909(KPF), 2015 WL 3947178, at *11 (S.D.N.Y. June 29, 2015), the court invalidated patent claims directed to a computerized method of crowd-funding. A representative claim included the following limitations: "(i) a computer operating either on the Internet or other network with access to a server; (ii) providing software tools with a suite of features allowing management of one or more creative projects; (iii) making certain types of offers associated with the project in exchange for funds for the project; (iv) facilitating the acceptance of offers by fans; (v) storing contact and marketing information of those who have accepted offers in exchange for funds in a database; and (vi) providing software tools that enable and control the exchange of information with a fan through the database." *Id.* at *3. The court held that "[b]eyond the abstract idea of patronage, the claims merely recite 'well understood, routine conventional activities,' by requiring conventional computer activities or routine data gathering steps . . . 'previously known to the industry.'" *Id.* at *11 (quoting *Alice*, 134 S. Ct. at 2357, 2359). Likewise, here, the limitations described in claim 12 of the '025 patent at each step of the process – (i) a local computer connecting to the Internet or other network with access to a remote computer server; (ii) software enabling an employee to take a test on the local computer; (iii) an interface enabling an employee to take a test on the local computer; (iv) transmitting employee identification and test information from the local computer to the server; and (v) enabling a manager to access test information from the server in real time – are purely conventional functions performed by the generic computer hardware and software and thus cannot qualify as an inventive concept. *See id.; see also Ultramercial*, 772 F.3d at 716 (finding steps including "updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet" were "routine" and failed to recite an inventive concept).

Similarly, in *DietGoal Innovations, Inc. v. Bravo Media* LLC, 33 F.Supp.3d 271, 284-288 (S.D.N.Y. 2014), the court found that the function performed by the computer at each step of the claimed "computerized meal planning" process was purely conventional: "Steps 1 and 2 involve

creating customized lists by retrieving information from a stored database–one of the most basic functions of the generic computer." *Id.* at 287 (citing *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950, 954 (Fed. Cir. 2014) (computerized claims that do "no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely" not patent eligible).  "Step 3 likewise amounts to conventional computer tasks: manipulating data based on inputs from the user, making computations from stored data, and displaying the results on a visual display." *Id.* (citing *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338, 1344-45 (Fed. Cir. 2013) (computerized aspects of method claim directed to "generating tasks to be performed in an insurance organization," including a "data component that stores, retrieves and manipulates data" and a client component that "transmits and receives data to/from the data component," insufficient to transform abstract idea into concrete application of that idea).  These are precisely the same conventional computing tasks – data transmission, processing, retrieval, manipulation and visual display – that the '025 patent describes to implement the abstract idea of administering a test.  *See id.*; *see also Amdocs (Israel) Ltd. v. OpenNet Telecom, Inc.*, 56 F.Supp.3d 813 (E.D. Va. Oct. 24, 2014) (no inventive concept in patent claims for data mediation software; claims merely described using conventional computing functions including network communication and collecting, processing, filtering, storing, and outputting data).

District courts also routinely invalidate patents where, as here, the recited conventional computer elements lack any specificity in directing the practitioner how to implement the claimed methods and systems.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (patent invalid where it "does not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent"); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. 11-908-SLR, 2015 WL 846532, at *8 (D. Del. Feb. 24, 2015) ("[Patentee] fails to identify any language in the claims or the specification demonstrating that the generic computer components function in an unconventional manner or employ sufficiently specific programming."); *Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-00089-

JRG, 2015 WL 993392, at *4-5 (E.D. Tex. Mar. 3, 2015) (invalidating patent that did not identify any "inventive algorithms" even where it might implicitly "involve complex computer programming"). Here, although the '025 patent describes "enabling an employee to enter answers to the [test] questions in the local computer" (*id.* at 2:33-35), "separating the training program from the answers submitted by the employee" so that "only the answer data and other test information need be transmitted to the server for processing" (*id.* at 2:54-57), and the central server being "adapted to receive . . . test information" ('025 patent at 9:65-10:3), the patent does not disclose any specialized programming or other specific technology for accomplishing these functions. Similarly, although the '025 patent describes "a dynamically created website" where "test information is visually updated and presented to the manager" (*id.* at 3:8-11) and that "updates the test information whenever the manager accesses [it]" (*id.* at 3:54-56) using "sorting software [that] can easily create charts and tables viewable by the supervisor on demand" (*id.* at 6:32-34), the patent does not disclose any specialized programming or other specific technology to implement a website capable of providing the described functionality. The patent provides no direction as to how to construct the claimed programs, software, interfaces or websites it describes; instead, the patent merely describes the function performed by these generic computer components and the intended result. *See Kroy IP Holdings, LLC v. Safeway, Inc.,* No. 2:12-cv-800-WCB, __ F.Supp.3d __, 2015 WL 3452469, at *16, 23 (E.D. Tex. May 29, 2015) (claims reciting "an inventory management system" using "code adapted to provide" incentive award program fulfillment functions "are not recitations of mechanisms. Those are recitations of objectives. In that regard, the claims are effectively functional in nature, and would read on any method of achieving those objectives with a computer."); *Affinity Labs of Texas LLC v. DirecTV, LLC,* Case No. 6:15-CV-0030, 2015 WL 3764356, at *8 (W.D. Tex. July 7, 2015) (claims reciting an "application" that "enables" a device to present a "graphical user interface" provided no inventive concept; patent was "devoid of any teaching or blueprint explaining how the device can do what it purports to do."); *Clear with Computers, LLC v. Altec Indus., Inc.,* No. 6:14-cv-79, 2015 WL 993392, at *8 ("The claims identify no inventive algorithms or otherwise creative

19

means for generating a customized sales proposal other than an instruction that the basic process be performed using generic computer components."); *Ultramercial*, 772 F.3d at 722 (Mayer, J., concurring) (noting that "[p]recise instructions for implementing an idea [may] confine the reach of a patent").

Independent claims 1 and 12 of the '025 patent thus fail to disclose an inventive concept that would transform the abstract idea of administering a test into a patent-eligible application. These claims are invalid under § 101.

4.    The Dependent Claims Add Nothing Inventive.

This Court need not consider every claim of the '025 patent before concluding that all are directed to ineligible subject matter under § 101. *Content Extraction and Transmission LLC v Wells Fargo Bank, National Association*, 776 F.3d 1343 at 1348 (Fed. Cir. 2014) (finding no error in defendant or district court declining to address every challenged claim individually because each recited "little more than the same abstract idea" and plaintiff had not explained why any of the claims differed from a representative claim for § 101 purposes); *Becton*, at 3 n.3 ("Where claims are 'substantially similar and linked to the same abstract idea,' the court may dispose of other claims in the patent with less detail" and "need not consider each claim distinctly.") (quoting *Content Extraction*, 776 F.3d at 1348).  Nonetheless, none of the dependent claims of the '025 patent "offers a meaningful limitation" over the abstract idea claimed by the independent claims. *See Alice*, 134 S. Ct. at 2360.  At best, they (1) add trivial, generic computing functionality, (2) attempt to narrow the claims to a particular technological environment such as "implementation via computers," *id.*, or (3) include other "well understood, routine, conventional activity."  *Mayo*, 132 S. Ct. at 1299.

Some claims add still more generic computing components or functionality, for example: a keyboard, a mouse, a touch-screen, a CD-ROM, an audio cassette, etc. (Claims 7, 10); transmitting particular types of test information from the local computer to the central server for access by the employee (Claim 11); sorting software that processes test information on the central server using various criteria (Claims 2, 6, 16); a website for managers to remotely access test

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

information on the central server (Claim 4, 13, 14); a "dynamically created website" wherein test information is visually updated and presented to the manager (Claims 5, 15); and "selective communication" between the central server and multiple local computers (claims 9, 19).  All of this is generic computing components and functionality or, at best, efforts to limit the reach of the claims to a particular technological environment.  They add no inventive concept because keyboards, CD-ROMs, networks, displays, interfaces, websites and software that can administer tests and enable the receipt, processing and review of test answers, are general-purpose computing equipment or functionalities, none of which is particularized in the claims.  *See Alice*, 134 S. Ct. at 2358 ("generic computer implementation" cannot rescue ineligible claim); *buySAFE*, 765 F.3d at 1355 (generic computing functionality adds nothing to ineligible claim to abstract idea); *Wolf v. Capstone Photography*, No. 2:13-CV-09573, 2014 WL 7639820, at *12 (C.D. Cal. Oct. 28, 2014) ("computer network server" and "web-site server" are generic technology insufficient to confer patent eligibility); *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 Civ. 6909(KPF), 2015 WL 3947178, at *6 (S.D.N.Y. June 29, 2015) ("application programs" providing "software tools" are generic technology insufficient to confer patent eligibility); *Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F.Supp.3d 1058, 1064-1065 (N.D. Cal. 2014) ("enhanced interface" for searching database did not supply inventive concept).

These trivial additions are insufficient to rescue a patent that is otherwise invalid under § 101.  And indeed, these dependent claims together demonstrate the unlimited range of possible implementation strategies for a patent that claims an abstract idea such as the '025 patent.  *See Wolf*, 2014 WL 7639820, at *12 (dependent claims invalid where they recite alternative, conventional methods of implementing the abstract idea which do not significantly limit the claims, and which together preempt the field).  The dependent claims thus add no "inventive concept" sufficient to rescue the asserted patent's claim to the abstract idea of administering a test.  They add limitations that are incidental to this concept, that name generic computing functionalities, or that recite conventional activity.  They are thus invalid under § 101.

## B.  RESOLVING QUESTIONS OF PATENT ELIGIBILITY ON THE PLEADINGS IS APPROPRIATE.

Patentability under section 101 is a threshold issue in patent cases and therefore the Court can and should assess the eligibility of the asserted patent at the pleading stage.[1] *See, e.g., Bilski*, 561 U.S. at 602 (§ 101 is a "threshold test"); *Ultramercial*, 772 F.3d at 717 (Fed. Cir. 2014), Circuit Judge Mayer *concurring* ("First, whether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation."); *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1365 (Fed. Cir. 2015), Circuit Judge Mayer *concurring* ("I commend the district court's adherence to the Supreme Court's instruction that patent eligibility is a 'threshold' issue, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), by resolving it at the first opportunity"—on a motion for judgment on the pleadings). Indeed, since *Alice*, at least 44 district courts have found patents invalid under section 101 on the pleadings. *See* Exhibit 5 (table listing and summarizing holdings of those 44 cases). Also since *Alice*, the Federal Circuit has affirmed at least five pre-*Alice* district court decisions finding patents invalid under section 101 on the pleadings. *See* Exhibit 6 (table listing and summarizing holding of those five cases). "There is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *CyberFone Sys., LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014); *see Content Extraction*, 776 F.3d at 1349.

This Court should follow the assembly of cases since *Alice* resolving § 101 questions early to relieve the parties of the expense and burden of proceeding through discovery and claim construction that will not alter the conclusion that the '025 patent is directed to ineligible subject matter.

## IV.  **CONCLUSION**

Broadly claimed and technologically vacuous patents, such as the '025 patent, needlessly

---

[1] This motion is brought under Rule 12(c) rather than Rule 12(b)(6) because the pleadings have closed. Fed. R. Civ. P. 12(c). Nonetheless, "the standard for deciding a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Sewell v. Bernardin*, Case No. 14-3143, 2015 WL 4619519, at *2 n.3 (2nd Cir. Aug. 4, 2015) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2nd Cir. 2001)); *Wolf*, 2014 WL 7639820, at *3-4 (§ 101 analysis is identical under Rule 12(b)(6) and Rule 12(c)).

threaten future innovators while contributing nothing to the public storehouse of knowledge. As Federal Circuit Judge Bryson recognized, sitting by designation in another district court:

> [S]uch patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps. The principal flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself. As such, they represent little more than functional descriptions of objectives, rather than inventive solutions. In addition, because they describe the claimed methods in functional terms, they preempt any subsequent specific solutions to the problem at issue.

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 66 F.Supp.3d 829, 845 (E.D. Tex. 2014) (finding patents invalid under § 101) (quoting *Alice*, 134 S. Ct. at 2355, 2357). Those words could have been written for this case.

For all of these reasons, PlayerLync respectfully requests that the Court grant this motion and dismiss this case with prejudice.

Dated:  August 25, 2015          /s/ *Ryan Tyz*
                                 Ryan Tyz, CSB 234895
                                 TYZ LAW
                                 28 2nd Street, Floor 3, #3119
                                 San Francisco, CA 94105
                                 Telephone:  (415) 513-0765
                                 Email:  ryan@tyzlaw.com

                                 Attorney for Defendant, PlayerLync LLC

1

## **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that all counsel of record who are deemed to have

3     consented to electronic service are being served with a copy of this document via the Court's

4     CM/ECF system on August 26, 2015.

5

6                                        */s/ Ryan Tyz*
                                         Ryan Tyz
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28