UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              :
MULTIMEDIA PLUS, INC., *et ano*.,             :
                                              :
                        Plaintiffs,           :        14cv8216
                                              :
             -against-                        :        OPINION & ORDER
                                              :
PLAYERLYNC, LLC,                              :
                                              :
                        Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs Multimedia Plus, Inc. and Multimedia Technologies, LLC (collectively "Plaintiffs" or "Multimedia") bring this patent-infringement action against defendant PlayerLync, LLC.  PlayerLync moves for judgment on the pleadings, asserting that the patent is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.  PlayerLync's motion for judgment on the pleadings is granted and this action is dismissed.

BACKGROUND

        In March 2004, David Harouche filed an application with the United States Patent and Trademark Office ("USPTO") seeking a patent for a "Hosted Learning Management System and Method for Training Employees and Tracking Results of Same" ("Hosted Learning Management System").  In October 2006, the USPTO rejected that application for failing to provide any "tangible results and practical real world application" under the now defunct "useful concrete tangible result test."  (Pl. Ex. 1 at 98.)  Harouche amended his application and, in November 2007, the USPTO withdrew its rejection and issued United States Patent No. 7,293,025 (the "'025 Patent").  Thereafter, Harouche assigned the '025 Patent to Multimedia

Technologies, which, in turn, granted an exclusive license to Multimedia Plus.  (Complaint ¶ 5.)

The '025 Patent is encapsulated in two independent claims: Claim 1 (the system claim) and Claim 12 (the method claim).  Claim 1 reads:

> 1. A hosted learning management training system for training employees, each employee having a unique identifier, comprising:
>
> at least one local computer having a low bandwidth connection;
>
> a high bandwidth training program resident with said local computer, said training program including an interactive test having questions;
>
> a first human-computer interface connected to said local computer enabling an employee to enter answers to said questions in said local computer;
>
> a remote computer server at a central location communicatable with said at least one local computer via said low bandwidth connection and receiving low bandwidth test information from said at least one local computer via said low bandwidth connection;
>
> and a second interface enabling a manager to access said low bandwidth test information on said central server, wherein when an employee interacts with said training program, said local computer transmits only the employee's identifier and said low bandwidth test information to said central server thereby allowing dynamic managerial oversight.

('025 Patent at 8:37–59.)  Claim 12 reads:

> 12. A method of training employees via a hosted learning management training system, each employee having a unique identifier, comprising the steps of:
>
> a) presenting a high bandwidth training program including a test having questions on at least one device associated with a local computer having a low bandwidth connection;
>
> b) enabling an employee to take the test and enter answers to the questions on the local computer via a first human-computer interface connected to the local computer;
>
> c) providing a remote computer server at a central location in communication with the at least one local computer via the low bandwidth connection and adapted to receive low bandwidth test information from the at least one local computer;

d) transmitting from the local computer to the central server only the employee identifier and the low bandwidth test information via the low bandwidth connection when an employee interacts with the training program; and

e) enabling a manager to access the low bandwidth test information from the central server in real time.

('025 Patent at 9:54–10:11.)

The invention seeks to combine two methods for employee training.  In one, employees view videotaped presentations on CD-ROM or DVD and then answer questions.  (See '025 Patent at 1:38–59.)  The drawback to this method is that, in order to sort test data by any number of variables, the test information needs to be entered into a centralized database.  (See '025 Patent at 1:60–2:9.)  The other method is to place the presentation and questions on a centralized computer that employees can access remotely.  (See '025 Patent 2:11–16.)  The drawback to this approach is the need for high-bandwidth connections to access the media and a robust server to accommodate multiple connections.  (See '025 Patent 2:16–22.)

The Hosted Learning Management System purports to surmount these drawbacks by maintaining large media files locally while transmitting only minimal data to a centralized server for analysis.  In particular, the '025 Patent describes a local computer (or smartphone) with training software and high-bandwidth media installed by CD-ROM, DVD, or a one-time download, without the need for a high-bandwidth connection.  The employee's computer then transmits the test information (employee ID, answers to questions, etc.) to a remote, central server via a low-bandwidth connection that can be accessed by the employee's manager or test-administrator.  Importantly, because the "large training program . . . need not be transmitted at all," the Hosted Learning Management System enables employees to take tests and submit answers without burdening the local data line.  (See '025 Patent 2:43–59.)

-3-

In October 2014, Multimedia commenced this lawsuit alleging that PlayerLync infringed and continues to infringe the '025 Patent.

LEGAL STANDARD

Patents are presumed valid and the "burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282. Typically, the invalidity of the patent must be established by "clear and convincing evidence." Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 95 (2011).  However, after Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), "courts have frequently decided questions of patent eligibility on the pleadings."  TNS Media Research, LLC v. Tivo Research & Analytics, Inc., No. 11-cv-4039 (SAS), --- F. Supp.3d ----, 2016 WL 817447, at *10 (S.D.N.Y. Feb. 22, 2016); see also OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents.").

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted).  "Because no evidence outside the pleadings is considered in deciding a . . . motion for judgment on the pleadings, 'it makes little sense to apply a clear and convincing evidence standard—a burden of proof—to such motions.'"  TNS Media, 2016 WL 817447, at *10 (quoting Modern Telecom Sys. LLC v. Earthlink, Inc., No. 14-cv-347 (DOC), 2015 WL

1239992, at *7 (C.D. Cal. Mar. 17, 2015)).[1]

In a motion for judgment on the pleadings pursuant to Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted) (alterations in original). Motions under Rule 12(c) are considered under the same standard as that applicable to motions to dismiss under Rule 12(b)(6). Willey v. Kirkpatrick, 801 F.3d 51, 61 (2d Cir. 2015). As with motions to dismiss, courts must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012). To survive, a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Further, "claim construction is not an inviolable prerequisite to a validity determination under [Section] 101." Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1374 (Fed. Cir. 2016) (quoting Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012)). Indeed, "courts have routinely invalidated claims without the benefit of claim construction or discovery—especially post-Alice." TNS Media, 2016 WL 817447, at *10. Where the claims of the patent are "straightforward" and "[n]o components are opaque such that claim construction would be necessary to flush out its contours . . . claim

---

[1] Neither the Supreme Court nor the Federal Circuit has directly addressed whether the clear and convincing standard applies when evaluating a lack of patent-eligible subject matter under Section 101 of the Patent Act. Papst Licensing GmbH & Co. KG v. Xilinx Inc., No. 16-cv-925 (LHK), 2016 WL 3196657, at *7 (N.D. Cal. June 9, 2016) ("Several courts have concluded that a heightened burden of proof makes little sense in the context of a motion . . . for judgment on the pleadings, and therefore declined to apply the clear and convincing evidence standard. . . . Other courts have applied the clear and convincing evidence standard . . . either without discussion, or because that standard is applied by the Federal Circuit in the context of other challenges to validity.").

construction is not necessary to reveal any material legal issues and would not be 'a wise use of judicial resources.'" Lumen View Tech. LLC v. Findthebest.com, Inc., 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013).

DISCUSSION

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized three implicit exceptions to Section 101's broad coverage: "laws of nature, natural phenomena, and abstract ideas." Bilski v. Kappos, 561 U.S. 593, 601 (2010). The Supreme Court engrafted these exceptions onto Section 101 because they embody the "basic tools of scientific and technological work" and "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would promote it." Alice, 134 S. Ct. at 2354 (citations omitted).

In determining patentability, the Supreme Court has articulated a two-part framework. See Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1296–97 (2012). First, a court must determine whether the claims at issue are directed to one of the three patent-ineligible exceptions. Alice, 134 S. Ct. at 2355. If so, a court must "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." Alice, 134 S. Ct. at 2357.

I.     Abstract Idea

"[A]n idea, having no particular concrete or tangible form," is impermissibly abstract. Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014). "In determining

-6-

whether a claim is directed to an abstract idea, courts look past the claim language to 'the

purpose of the claim—in other words, what the invention is trying to achieve.'" Morales v.

Square, Inc., 75 F. Supp. 3d 716, 724 (W.D. Tex. 2014) (quoting California Inst. of Tech. v.

Hughes Commc'ns Inc., 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014)).  Although the Supreme

Court has declined "to delimit the precise contours of the 'abstract ideas' category," Alice, 134

S. Ct. at 2357, courts have found that "a claim is directed to an abstract idea when it describes a

fundamental concept or longstanding practice."  Morales, 75 F. Supp. 3d at 724.

   For instance, in IpLearn the defendant in a patent-infringement action moved for

summary judgment, arguing patent invalidity.  See IpLearn, LLC v. K12 Inc., 76 F. Supp. 3d

525, 533 (D. Del. 2014).  The court found the patent, directed to "a computer-aided learning

method and apparatus" that "assess[es] a user's or a student's understanding in a subject and

reward[s] the user who has reached one or more milestones," to be impermissibly abstract.

IpLearn, 76 F. Supp. 3d at 533 ("Instructing students, evaluating those students, and providing

methods to review their progress are concepts that have probably existed as long as there has

been formal education . . . it is beyond dispute that the claims are directed toward an abstract

idea—instruction, evaluation, and review.").  The IpLearn court noted that the claims were

directed at "an abstraction, addressed to fundamental human behavior related to instruction,"

which became apparent when the claims were summarized without generic references to

computers:

> 1) accessing a learner's test results, 2) analyzing those test results, 3) providing
> guidance on weaknesses, 4) generating a report on two or more subjects to be
> shared with others, 5) considering the learner's preferences, 6) allowing access to
> areas of a subject on the Internet, 7) providing an identifier for a learner,
> 8) storing the learner's materials, and 9) allowing a search of those materials.

IpLearn, 76 F. Supp. 3d. at 533.  The district court concluded that, "[a]s a whole, they represent

an abstract idea of conventional everyday teaching that happens in schools across the country."

IpLearn, 76 F. Supp. 3d. at 533.

Here, the '025 patent describes "a system and method of training employees via a hosted learning management training system."  Once the generic, computing terminology is removed, it is clear that the '025 Patent claims are directed at the abstract concept of administering a test: The '025 Patent would provide users with instructional materials including test questions, collect answers to the questions, and send answers to a central server to be reviewed by a manager.  For example, Claim 12 would read:

> A method of training employees via a hosted learning management training system, each employee having a unique identifier, comprising the steps of: a) presenting a . . . training program including a test having questions . . . b) enabling an employee to take the test and enter answers to the questions . . . c) providing . . . a central location . . . adapted to receive . . . test information d) transmitting . . . only the employee identifier and the . . . test information . . . when an employee interacts with the training program; and e) enabling a manager to access the . . . test information from . . . in real time.

Thus, "[t]he patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world."  Adrea, LLC v. Barnes & Noble, Inc., No. 13-cv-4137 (JSR), 2015 WL 4610465, at *5 (S.D.N.Y. July 24, 2015). In sum, the claims attempt to capture the abstract idea of administering a test.

II.     Inventive Concept

In analyzing the second step, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  Alice, 134 S. Ct. at 2355 (quoting Mayo, 132 S. Ct. at 1297–98).  "Claims are invalid for lack of an inventive concept if they merely combine the patent-ineligible concept with 'well-understood, routine, conventional

activities.'  For example, 'routine data-gathering steps' do not transform an abstract idea into a

patent-eligible invention.  Nor does 'conventional computer activity.'"  TNS Media, 2016 WL

817447, at *9 (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1349 (Fed.

Cir. 2015)).  As the Supreme Court explained:

> Stating an abstract idea while adding the words "apply it" is not enough for patent
> eligibility.  Nor is limiting the use of an abstract idea to a particular technological
> environment.  Stating an abstract idea while adding the words "apply it with a
> computer" simply combines those two steps, with the same deficient result.

Alice, 134 S. Ct. at 2358 (citations and internal quotations omitted).  Thus, "wholly generic

computer implementation is not generally the sort of 'additional featur[e]' that provides any

'practical assurance that the process is more than a drafting effort designed to monopolize the

[abstract idea] itself.'"  Alice, 134 S. Ct. at 2358 (quoting Mayo, 132 S. Ct. at 1297).

Considered individually or as an ordered combination, the claims in the '025

Patent fail to transform the abstract idea of test administration into patent-eligible subject matter.

Individually, the claims merely recite "well-understood, routine, conventional" computer

components or functions, "previously known to the industry."  Alice, 134 S. Ct. at 2359

(alterations omitted); Adrea, 2015 WL 4610465, at *6.  For instance, the independent claims

include a "local computer," a "training program including an interactive test having questions," a

"training session display," a "first human-computer interface . . . enabling an employee to enter

answers to questions," a "low bandwidth connection," a "remote computer server at a central

location," and a "second interface enabling a manager to access" the test information in real

time.  ('025 Patent 8:37–59.)  Using such generic computer components to administer a test does

not transform the idea into "inventive concept."  See Alice, 134 S. Ct. at 2360 ("[W]hat

petitioner characterizes as specific hardware—a 'data processing system' with a

-9-

'communications controller' and 'data storage unit' . . . —is purely functional and generic.").

Nor does the '025 Patent "identify any language in the claims or the specification demonstrating that the generic computer components function in an unconventional manner or employ sufficiently specific programming." See Intellectual Ventures I, LLC v. Motorola Mobility LLC, 81 F. Supp. 3d 356, 367 (D. Del. 2015). For a computer to "impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1333 (Fed. Cir. 2010). Although the '025 Patent describes computer functions "enabling an employee to enter answers to the [test] questions in the local computer" ('025 Patent at 2:33–35) and explains that the central server is "adapted to receive . . . test information" ('025 patent at 9:65–10:3), the patent does not disclose any specialized programming or other specific technology for accomplishing these functions.

And while the '025 patent describes "a dynamically created website" where "test information is visually updated and presented to the manager" ('025 Patent at 3:8–11) using "sorting software [that] can easily create charts and tables viewable by the supervisor on demand" ('025 Patent at 6:32–34), the patent does not "identify [any] inventive algorithms or otherwise creative means for generating [the charts and tables] other than an instruction that the basic process be performed using generic computer components." Clear with Computers, LLC v. Altec Indus., Inc., No. 6:14-cv-79, 2015 WL 993392, at *5 (E.D. Tex. Mar. 3, 2015). "Those are not recitations of mechanisms. Those are recitations of objectives. In that regard, the claims are effectively functional in nature, and would read on any method of achieving those objectives

with the use of a computer." Kroy IP Holdings, LLC v. Safeway, Inc., 107 F. Supp. 3d 677, 704 (E.D. Tex. 2015) (finding patent invalid where "claims simply recite that the computer code in the program is 'adapted to provide a sponsor-selected specific award unit item' that is 'tailored to demographic and psychographic preferences of a sponsor-selected consumer user,' and is 'adapted to provide a sponsor-selected geographic location for fulfillment'").

And as an ordered combination, the '025 Patent fares no better. It describes a process as old as the internet itself: transmitting data from one computer to another. See buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computer functionality is generic . . . . That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Specifically, the process described in the '025 Patent begins with large media files maintained locally on CD-ROM, DVD, or some other format that are viewed by an employee who then accesses software on a local computer to answer questions. Then, the answer data is sent to a centralized server where it is compiled. Finally, the central hub sends those results back to the local computer. But "the transfer of content between computers is merely what computers do and does not change the analysis." Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 717 (Fed. Cir. 2014).

At best, the claims in the '025 Patent describe the use of the internet and computers to make the process of test administration "easier and more efficient. 'But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.'" Kickstarter, Inc. v. Fan Funded, LLC, No. 11-cv-6909 (KPF), 2015 WL 3947178, at *13 (S.D.N.Y. June 29, 2015) (quoting OIP Techs., 788 F.3d at 1363).

III.   Dependent Claims

"Each claim of a patent (whether in independent, dependent, or multiple

dependent form) shall be presumed valid independently of the validity of other claims."  35

U.S.C.A. § 282.  However, where the claims are "substantially similar and linked to the same

abstract idea," a court need not address each claim individually.  Content Extraction &

Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014), cert.

denied, 136 S. Ct. 119 (2015); see also Bilski, 130 S. Ct. at 3231 (determining that eleven claims

were invalidly abstract after analyzing only two of the claims in detail).  Multimedia

acknowledges that the "invention is encapsulated in the independent claims" (Pl. Br., at 6), and

does not challenge PlayerLync's assertion that the dependent claims are invalid (see Def. Br., at

20–21).  In any event, the dependent claims are invalid for the same reasons as the independent

claims and fail to "offer[] a meaningful limitation" on the abstract idea in the patent.  Alice, 134

S. Ct. at 2360; see also Kickstarter, 2015 WL 3947178, at *11 (finding invalid claim reciting

"'application programs' providing 'software tools' to manage projects, transmitting and

receiving 'offer data' and 'acceptance data,' 'registering contact and marketing information' of

individuals in a database, and providing 'software tools' to communicate with those in the

database.").

<u>CONCLUSION</u>

For the foregoing reasons, PlayerLync's motion for judgment on the pleadings is granted and Multimedia's patent-infringement claim is dismissed.  The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: July 29, 2016
        New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.